SAUK CENTRE EDUCATION ASSOCIATION, et al., Relators,

v.

Alice SEAGREN, Commissioner, Minnesota Department of Education, Respondent.

No. A06–2173.

Court of Appeals of Minnesota.

Nov. 13, 2007.

Harley M. Ogata, Education Minnesota, St. Paul, MN, for relators.

Lori Swanson, Attorney General, Kathryn Morrell Woodruff, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; KLAPHAKE, Judge; and CRIPPEN, Judge.

## OPINION

CRIPEN, Judge.*

Relators Sauk Centre Education Association and Independent School District No. 743 (Sauk Centre) challenge the decision of the commissioner of the Minnesota Department of Education denying their application for alternative-teacher-professional-pay-system funding under Minn.Stat. § 122A.413–416 (Supp.2005). Relators argue that the commissioner's denial of their proposal for failing to adequately reform the steps and lanes salary schedule was arbitrary and capricious and unsupported by the evidence.

Because the commissioner's interpretation of the statute is based on the clear language of the statute and is supported by substantial evidence, we affirm.

## FACTS

The Minnesota Legislature enacted Minn.Stat. §§ 122A.413–.416 in 2005[1] to encourage development of educational improvement plans by offering the incentive of additional teacher pay tied to measurable performance improvement. The state provides additional funding to school districts that undertake the reforms necessary to qualify for the program known as the Q Comp program. Relators were one of a number of school districts and teacher organizations that applied for approval of

their plan in order to receive the funding, which is beyond the usual state aid to schools.

To qualify for funding, the Q Comp statute requires, among other things, assessments, performance goals, accountability, professional staff development, and mentoring. Minn.Stat. § 122A.413, subd. 2. In addition, a school district must submit a restructured teacher pay system that "encourages teachers to improve their knowledge and instructional skills in order to improve student learning"; the restructured system must also promote the training, recruitment, and professional advancement of highly skilled teachers. Minn. Stat. § 122A.414, subd. 1.

The statute also identifies specific components that must be a part of a school district's alternative professional pay plan, including descriptions of career advancement opportunities and the means to achieve advancement, and a description of the means to obtain additional compensation. In addition, pertinent to the question in this case, the plan must reform the usual "steps and lanes" salary schedule,[2] without reducing any teacher's compensation—basing at least 60% of the compensation increase on measurable improvements in student or teacher performance. *Id.* at subd. 2(b).

Drawing on the statute, the commissioner has identified five necessary elements to the alternative pay system, including the demand that standards base at least 60% of any compensation increase on measurable teacher/student performance and that

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. 2005 Minn. Laws 1st Spec. Sess. Ch. 5, art 2, §§ 39–44.

2. The "steps and lanes" salary schedule is the norm for teacher pay in Minnesota. A teacher advances through steps based on years of teaching, ultimately reaching the highest level of pay in any one lane. In order to advance to a new lane, a teacher must add training or education, such as receiving an advanced degree or specialized training in a certain subject area.

an alternative professional pay schedule unhooks teacher compensation from the traditional steps and lanes progression.

Relators challenge the commissioner's interpretation of the statutory requirements as applied to their compensation plan. In this proposal, relators retained the basic steps and lanes salary structure, but added a performance pay component. Every teacher in the district would receive $100 if students increased their average proficiency on the MCA–II standardized test in a given year. Every teacher at a school site would receive $100 if district students at the site increased their proficiency by 2%. In addition, all teachers were eligible to receive $800 if they participated in a professional learning community (PLC), which essentially meant that they had to attend staff meetings. Teachers would continue to move through the salary schedule based on years of service and the addition of education and training credits.

The commissioner denied the proposal on the rationale that relators, rather than proposing an alternative pay system, remained unduly tied to the steps and lanes compensation system. The commissioner noted that progression on the salary schedule was not changed by the addition of performance pay and that some reform to the salary schedule itself is required to meet the requirement of Minn.Stat. 122A.414, subd. 2(b). Demanding this reform in addition to meeting the 60% standard (the percent of compensation based on performance), the commissioner concluded that relators were unwilling to reform their salary schedule and denied the application.

## ISSUE

Was the commissioner's decision to reject relators' application for alternative teacher performance pay funding an error of law or arbitrary and capricious?

## ANALYSIS

*Standard of Review*

 Agency decisions enjoy a presumption of correctness, and a reviewing court defers to the agency's expertise and special knowledge in its field of technical knowledge, expertise, and training. *In re Excess Surplus Status of Blue Cross and Blue Shield,* 624 N.W.2d 264, 278 (Minn. 2001). An agency decision is sustained unless it violates constitutional provisions, exceeds statutory authority, is based on an error of law, is unsupported by substantial evidence, or is arbitrary and capricious. *AFSCME, Council No. 14 v. Scott County,* 530 N.W.2d 218, 220 (Minn.App.1995), *review denied* (Minn. May 16, June 14, 1995). But construction of a statute is a question of law reviewed de novo by this court. *Id.*

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (2006). Relators here assert that the issue is strictly a question of law entailing interpretation of Minn. Stat. § 122A.414, subd. 2.

*Administration of Plans*

Relators argue that the commissioner approved twelve plans that do not immediately modify steps and lanes salary schedules, including two that do not clearly provide assurance that there will be a change in the future. Having examined those twelve proposals, we are satisfied that the record does not show that any of the

twelve approvals are unconditional or that approval in the future can be expected without modification. Therefore, we do not reach relators' contention that the commissioner's decision is arbitrary because it is inconsistent with the approval of other plans.

*Statutory Standard*

In order to qualify for additional teacher compensation under the statute, a district must adopt an alternative teacher professional pay system (ATPPS). Minn.Stat. § 122A.414, subd. 2(a). The ATPPS must include "reform [of] the 'steps and lane' salary schedule[.]" *Id.* at subd. 2(b)(3). The legislative intent for establishing an ATPPS is included in the statute:

> A restructured alternative teacher professional pay system is established ... to provide incentives to encourage teachers to improve their knowledge and instructional skills in order to improve student learning and for school districts ... to recruit and retain highly qualified teachers, encourage highly qualified teachers to undertake challenging assignments, and support teachers' roles in improving students' educational achievement.

Minn.Stat. § 122A.414, subd. 1. Legislative intent is also discernible in the statute's emphasis on "rigorous professional development," "teaching quality improvement," and mentoring, and in the choice of alternative pay to encourage professional development. Minn.Stat. §§ 122A.413, subds. 1, 2; .414, subd. 1. In that context, "reform [of] the 'steps and lanes' salary schedule" is an important component of the legislative intent.

■ Relators argue that their proposal, which awards bonuses based on measurable performance standards, completely alters the usual steps and lanes salary schedule, pointing out that the plan meets the statutory standard that 60% of compensation increases are premised on performance goals. But under relators' plan, although a teacher can earn a bonus by meeting certain performance standards, a teacher may also avoid performance goals and continue to advance through the steps and lanes salary schedule without change. Although relators' plan changes the compensation system and meets the 60% standard, this does not mean that the commissioner is arbitrary and capricious when demanding reform of the steps and lanes structure that limits advancements without performance improvements. The statute requires reform of the salary schedule. Minn.Stat. § 122A.414, subd. 2(b). The statute contemplates that all teachers increase and improve their performance and instructional capabilities. Thus, the commissioner's interpretation of the statute to require real reform of the steps and lanes salary schedule, rather than the mere addition of a bonus component, is not unreasonable.

## DECISION

The commissioner's rejection of relators' Q Comp proposal because the proposal failed to reform relators' steps and lanes salary schedule was neither arbitrary nor capricious, nor an unreasonable interpretation of the statute.

**Affirmed.**